UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DARREN ARMSTEAD, <br><br> Plaintiff, <br><br> v. <br><br> DR. MARANDET, *et al.*, <br><br> Defendants. | CAUSE NO.: 3:18-CV-541-RLM-MGG |

OPINION AND ORDER

Darren Armstead, a prisoner without a lawyer, claims Doctor Noe Marandet and Nurse Practitioner Kimberly Myers violated his Eighth Amendment rights. Mr. Armstead claims the defendants were deliberately indifferent to his serious medical needs by denying him a bottom bunk pass upon his entry into the Miami Correctional Facility and for denying him proper medical treatment after he fell in his cell on April 10, 2017. Mr. Armstead claims the defendants knew his hand injury required immediate medical attention, but purposely denied and delayed his treatment. Both sides have moved for summary judgment.

Summary judgment must be granted when "there is no genuine dispute as to any material fact sand the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts

in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). The summary judgment standard doesn't change when two sides file cross-motions. Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc., 293 F.3d 402, 404 (7th Cir. 2002). When evaluating each side's motion, the court "construe[s] all inferences in favor of the party against whom the motion under consideration is made." Metro. Life Ins. Co. v. Johnson, 297 F.3d 558, 561–562 (7th Cir. 2002)

Mr. Armstead had diabetes and hypertension at the time of his intake into the Miami Correctional Facility in March 2017. (ECF 2 at 5.) Due to his diabetes, Mr. Armstead suffers from neuropathy, which causes weakness and pain in his hands and feet. (*Id.*) He was assigned a top bunk. (*Id.*) On April 10, 2017, Mr. Armstead was found unresponsive in his cell after he fell from either his top bunk or the ladder that leads to his bunk. (*Id.* at 6.) Nurse Practitioner Kimberly Myers assessed his condition and admitted him to the infirmary. (ECF 95 at 7.)

The next day, Dr. Noe Marandet examined Mr. Armstead's hands and shoulder. In the doctor's words, Mr. Armstead's injuries were "unremarkable." (*Id.* at 3.) Medical staff saw Mr. Armstead walk without assistance. (*Id.*) Dr. Marandet scheduled Mr. Armstead for a follow-up appointment and discharged him that day. (ECF 83-1 at 46.) Mr. Armstead claims that Dr. Marandet promised to order an x-ray for his injuries (ECF 2 at 6), but Dr. Marandet doesn't recall saying that and it's not reflected in any medical record. (ECF 95-3.) Dr. Marandet insists he didn't order an x-ray since it wasn't clinically necessary. (*Id.*)

Mr. Armstead had his follow-up appointment with Dr. Marandet two weeks later, on April 24. (*Id.*) According to the medical record, Mr. Armstead complained of pain associated with sciatica and diabetic neuropathy but didn't complain about his hand injury. (ECF 83-1 at 54.) On May 2 and June 14, Mr. Armstead had appointments with prison medical staff, but not the defendants. (ECF 95 at 7.) During the June 14 appointment, a nurse first noticed an abnormality—an enlarged area—in Mr. Armstead's hand and scheduled him for further treatment. (*Id.* at 8.) Ms. Myers assessed Mr. Armstead's hand on June 28, and ordered an x-ray, which showed two fractures in his hands that were in anatomical alignment. (*Id.* at 4.) Ms. Myers ordered a splint for him and told him to keep his hand immobilized until his next x-ray. (*Id.* at 8.)

Mr. Armstead received five x-rays in all. (*Id.* at 13.) Each follow-up x-ray showed that his fractures were healing and his bones were aligned. (*Id.* at 9.) His diabetes complicated the healing process but both fractures fully healed. (*Id.* at 5-6.) Ms. Myers continued to see him regularly. (*Id.*) Mr. Armstead took physical therapy treatments for weeks. (*Id.*) He has been able to perform daily tasks and work. (*Id.* at 12.) From the time of the fall until he filed this suit, Mr. Armstead always had pain management medication prescribed. (*Id.* at 20.) Both parties argue that summary judgment is proper because there is no genuine issue of a material fact. (ECF 74 & 95.) The court agrees.[1]

---

[1] Six days before filing his summary judgment motion, Mr. Armstead filed his answers to the defendants' interrogatories, intermixed with his own interrogatory questions. He later filed a "motion to clarify," asking the court to deem his interrogatories to be admitted due to the defendants' failure to answer them. (ECF 72.) But the defendants answered the same or very similar interrogatory questions as reflected in docket entries 84 and 85. Mr. Armstead's "motion to clarify/notice" will be denied as well as his motion

A prisoner bringing an Eighth Amendment claim of inadequate medical care must show that the responsible prison officials were deliberately indifferent to his serious medical needs. Dunigan ex rel. Nyman v. Winnebago County, 165 F.3d 587, 590 (7th Cir. 1999). This entails a two-step process: "[t]he plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard." Sherrod v. Lingle, 223 F.3d 605, 610 (7th Cir. 2000).

For the first step of the analysis, a serious medication condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645 (7th Cir. 2005). For the second step, the prisoner must prove that a prison official "actually knew of and disregarded a substantial risk of harm." Petties v. Carter, 836 F.3d 722, 726 (7th Cir. 2016). Neither medical malpractice nor a disagreement about medical judgment amount to deliberate indifference. *Id.* Moreover, "[e]vidence that some medical professionals would have chosen a different course of treatment is insufficient" to support deliberate indifference. Murphy v. Wexford Health Sources, Inc., No. 19-3310, 2020 U.S. App. LEXIS 19055, at *1 (7th Cir. June 18, 2020). Lastly, treatment decisions of medical professionals are entitled deference, "unless no minimally competent professional would have so responded under those circumstances." Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014).

---

to compel (ECF 81). It is important to repeat, that in construing the facts in this opinion and order, the court viewed them in the light most favorable to Mr. Armstead.

Mr. Armstead argues two separate violations of the Eighth Amendment: the denial of a bottom bunk pass when he first entered the prison and the inadequate medical care he received after he fell. (ECF 75 at 3-9.) The November 2, 2018 screening order specifically granted Mr. Armstead only to proceed against the defendants for denying him proper medical treatment for his hand after he fell on April 10, 2017. (ECF 17 at 7.) All other claims in the complaint were dismissed. (*Id.* at 7.) The screening order states: "[t]here is no indication that any of the defendants were involved with, or deliberately indifferent in, assigning Mr. Armstead to a top bunk. Indeed, there is no allegation that Mr. Armstead even asked for a bottom bunk." (*Id.* at 4.) Mr. Armstead's arguments about the denial of a bottom don't relate to a claim before the court, and the only remaining issue before the court is whether Mr. Armstead was denied constitutionally required medical care. [2]

The undisputed evidence suggests that Mr. Armstead's bone fractures caused him to suffer a serious medical condition as months of treatments and monitoring were required to heal his hand. He has satisfied the objective test of the Eighth Amendment analysis.

Regarding the subjective test, Mr. Armstead claims that two omissions after the fall are harmful enough to show deliberate indifference: the defendants didn't order an x-ray immediately and didn't refer him to an orthopedic specialist.

---

[2] After the parties' motions for summary judgment had been fully briefed, Mr. Armstead moved for admission of an affidavit of another inmate who was allegedly denied a bottom bunk even though he suffered from various medical conditions. (ECF 114.) This motion will be denied because the bunk placement is an issue in this case.

Neither assertion would support an Eighth Amendment violation. First, after the injury, Mr. Armstead was admitted to the infirmary and was assessed and monitored by many members of the prison medical staff. His injuries at the time appeared "unremarkable" and by the next day Mr. Armstead functioned well enough unassisted to be discharged.[3] Mr. Armstead is upset that he received an incorrect diagnosis, but a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice. . . . " Estelle v. Gamble, 429 U.S. 97, 107 (1976). In fact, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." Id. Mr. Armstead points to no evidence from which to infer that no minimally competent professional wouldn't have followed the course of treatment prescribed by the defendants under the circumstances.

Second, every x-ray revealed that his bones remained aligned, meaning that they would heal properly without surgery. Mr. Armstead presents no evidence to suggest that a correct diagnosis or an out-patient referral would have radically changed the course of his treatment. In any case, prisoners are "not entitled to demand specific care," Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997). In short, neither the misdiagnosis nor the failure to refer Mr. Armstead to an outside doctor constitute decisions "that represents such a substantial departure from accepted professional judgment, practice, or standards,"

---

[3] Medical records contain a note that the day after Mr. Armstead's fall he was sitting upright playing chess with another offender with no complaints of pain. (ECF 83-1 at 37.)

<u>Jackson v. Kotter</u>, 541 F.3d 688, 697 (7th Cir. 2008), as to create a triable issue of fact.

For these reasons, the Court:

A. DENIES Mr. Armstead's motions to clarify (ECF 72) and to compel (ECF 81);

B. DENIES Mr. Armstead's motion to amend/correct summary judgment (ECF 114);

C. DENIES Mr. Armstead's motion for summary judgment (ECF 74);

D. GRANTS the defendants' Motion for Summary Judgment (ECF 94); and

E. DIRECTS the Clerk to:

    a. enter judgment in favor of defendants Doctor Noe Marandet and Nurse Practitioner Kimberly Myers and against Mr. Armstead; and

    b. close this case.

SO ORDERED on September 16, 2020

                                                   s/ Robert L. Miller, Jr.
                                                   JUDGE
                                                   UNITED STATES DISTRICT COURT